816 So.2d 1190 (2002)
Auburn WEBB, Appellant,
v.
STATE of Florida, Appellee.
No. 4D01-1834.
District Court of Appeal of Florida, Fourth District.
May 22, 2002.
*1191 Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Mark Rosenblatt, Assistant Attorney General, Fort Lauderdale, for appellee.
GROSS, J.
On double jeopardy grounds, Auburn Webb challenges his convictions for driving on a revoked license under two separate sections of Chapter 322, Florida Statutes (2000). We affirm, holding that a defendant may be convicted and sentenced for driving under both a habitual traffic offender revocation and a permanent license revocation.
Webb was involved in an automobile accident where he fled the scene. The state charged Webb with four crimesleaving the scene of an accident involving personal injury, failure to register a vehicle, and two crimes involving driving with a revoked license. One charge was under section 322.34(5), Florida Statutes (2000), which provides:
Any person whose driver's license has been revoked pursuant to s. 322.264 (habitual offender) and who drives any motor vehicle upon the highways of this state while such license is revoked is guilty of a felony of the third degree....
Section 322.264 defines a "habitual traffic offender" as having accumulated a certain number of specified convictions within a five year period. For example, three or more convictions of "[v]oluntary or involuntary manslaughter resulting from the operation of a motor vehicle" within a five year period results in classification as a habitual traffic offender. § 322.264(1)(a), Fla. Stat. (2000). Also, a revocation may result from "[f]ifteen convictions for moving traffic offenses for which points may be assessed." § 322.264(2), Fla. Stat. (2000). Section 322.27(5) requires the Department of Highway Safety and Motor Vehicles to revoke the license of any person "designated a habitual offender" as set forth in section 322.264.
The second statute under which Webb was charged was section 322.341, Florida Statutes (2000), which reads:
Any person whose driver's license or driving privilege has been permanently revoked pursuant to s. 322.26 or s. 322.28 and who drives a motor vehicle upon the highways of this state is guilty of a felony of the third degree....
Section 322.26(1)(a) provides for the permanent revocation of a driver's license in cases involving
[m]urder resulting from the operation of a motor vehicle, DUI manslaughter where the conviction represents a subsequent DUI-related conviction, or a fourth violation of s. 316.193 or former s. 316.1931.[1]
Subsections 322.28(2)(e) and (3) require permanent revocation of a driver's license for four DUI convictions, a conviction of *1192 "DUI manslaughter in violation of s. 316.193," or a conviction of "murder resulting from the operation of a motor vehicle."
At a plea conference, the defendant entered a plea to all four crimes, with sentencing deferred until after a presentence investigation. We reject the state's contention that Webb "unequivocally agreed to accept the plea regardless of the ultimate decision on his double jeopardy claim." The negotiated plea form filled out before the plea conference indicated a concern, based on double jeopardy grounds, that Webb could not be convicted for the two driver's license offenses. During the trial judge's plea colloquy with Webb, the following exchange occurred:
Court: Sir, do you understand that if it turns out at the time of sentencing that you can't be convicted of both suspended driver's license charges here, that one of them would be stricken and you'd be sentenced on the other one.... Do you understand sir?
Webb: Yes, sir.
Court: If you can be convicted of both then you would be convicted of both; do you understand that, sir?
Webb: Yes, sir.
On the two driver's license crimes and the leaving the scene of an accident charge, the trial court adjudicated Webb to be guilty and sentenced him to concurrent sentences of eighteen months in the Department of Corrections, with credit for 126 days time served.
Webb's convictions under sections 322.34(5) and 322.341 did not violate the double jeopardy clause of the Fifth Amendment of the United States Constitution. It is true that the identical driving conduct supported both convictions. However, whether a court may impose multiple convictions and sentences for offenses resulting from a single criminal episode is "purely a question of legislative intent." Hardy v. State, 705 So.2d 979, 979 (Fla. 4th DCA 1998).
In determining the constitutionality of multiple convictions and sentences for offenses arising from the same criminal transaction, the dispositive question is whether the legislature "intended to authorize separate punishments for the two crimes." Albernaz v. United States, 450 U.S. 333, 334, 101 S.Ct. 1137, 1145, 67 L.Ed.2d 275 (1981); accord State v. Smith, 547 So.2d 613, 614 (Fla.1989).
M.P. v. State, 682 So.2d 79, 81 (Fla.1996).
Section 322.264 expressly contemplates that the same convictions may be counted to revoke a driver's license multiple times under different statutes:
The fact that previous convictions may have resulted in suspension, revocation, or disqualification under another section does not exempt them from being used for suspension or revocation under this section as a habitual offender.
Thus, a DUI manslaughter conviction sufficient to permanently revoke a license under section 322.26(1)(a) may also count as a conviction to habitualize the offender under section 322.264(1)(a). Because it requires three criminal convictions or fifteen convictions for moving traffic offenses, the habitual traffic offender statute primarily punishes recidivist bad driving. A permanent revocation of a driver's license occurs in cases involving a death or seriously dangerous conduct, such as a fourth DUI. See § 322.26(1)(a), Fla. Stat. (2000). Where the legislature has authorized multiple revocations of a driver's license using the same convictions under separate statutes, it follows that the legislature intended to authorize separate punishments when a defendant's conduct has triggered those revocations.
*1193 Section 775.021(4)(b), Florida Statutes (2000), states that it is the intent of the legislature "to convict and sentence for each criminal offense committed in the course of one criminal episode or transaction." None of the three exceptions to this rule of construction applies in this case. See § 775.021(4)(b)1.-3., Fla. Stat. (2000). Sections 322.34(5) and 322.341 do not require identical elements of proof; the former requires evidence of a habitual traffic offender revocation, while the latter requires proof of a permanent revocation. The two offenses are not "degrees of the same offense as provided by statute." § 775.021(4)(b)2., Fla. Stat. (2000). Neither statute is a necessarily lesser included offense of the other. See § 775.021(4)(b)3.; State v. McCloud, 577 So.2d 939, 941 (Fla. 1991). A permanent license revocation does not necessarily result in a habitual traffic offender revocation, and vice versa.
AFFIRMED.
GUNTHER, J., concurs.
STONE, J., concurs specially with opinion.
STONE, J., concurring specially.
I concur in affirming, but do so on the authority of Novaton v. State, 634 So.2d 607 (Fla.1994). I, therefore, would not reach the issue addressed in the majority opinion.
NOTES
[1] Section 322.26(2), Florida Statutes (2000), also provides for a permanent revocation of a driver's license in "any case where DUI manslaughter occurs and the person has no prior convictions for DUI-related offenses," subject to the ability to petition the Department of Highway Safety and Motor Vehicles for reinstatement after five years, pursuant to section 322.271(4), Florida Statutes (2000).